**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**DEC 31 2003**

**PATRICK FISHER**
**Clerk**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

    Plaintiff - Appellant,

v.

No. 02-2338

ADALBERTO NAVA-SOTELO aka
ROBERT MONTOYA,

    Defendant - Appellee.

---

**Appeal from the United States District Court**
**for the District of New Mexico**
**(D.C. No. CR-01-1244 MV)**

---

Submitted on the briefs:

David C. Iglesias, United States Attorney, Norman Cairns, Assistant United States Attorney, Albuquerque, New Mexico for Plaintiff-Appellant.

Stephen P. McCue, Federal Public Defender, Robert F. Kinney, Assistant Federal Public Defender, and Shari Lynn Allison, Research & Writing Specialist, Office of the Federal Public Defender, Las Cruses, New Mexico, for Defendant-Appellee.

---

Before **SEYMOUR, MURPHY** and **O'BRIEN**, Circuit Judges.

---

**O'BRIEN**, Circuit Judge.

_____

Along with other crimes, Adalberto Nava-Sotelo was convicted for the use and carrying of a firearm during a crime of violence in violation of 18 U.S.C. § 924(c). The issue presented is whether a mandatory ten-year consecutive sentence for discharge of firearm must be imposed if the discharge was accidental. The district court answered in the negative. _United States v. Nava-Sotelo_, 232 F. Supp.2d 1269 (D. N.M. 2002). We answer in the affirmative and reverse.[1]

## I. Background

On May 8, 2001, Nava-Sotelo's brother, Oswaldo, an inmate at the La Tuna federal prison in Anthony, Texas, was transported by two prison officers, Javier Franco and Jose Luis Almedia, to a dental clinic in Las Cruces, New Mexico, for oral surgery.[2] Following the surgery, Franco and Almedia escorted Oswaldo to a prison transport van. As Franco and Almedia were entering the van, Nava-Sotelo

_____

[1]After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist in the determination of this appeal. _See_ Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The cause is therefore ordered submitted without oral argument.

[2] Oswaldo was serving 262 months for conspiracy to distribute cocaine and racketeering.

approached them with a loaded firearm in his hand.[3]   In an attempt to disarm Nava-Sotelo, Franco grabbed for the gun.  A struggle ensued and the firearm discharged into the ground; Nava-Sotelo's finger was on the trigger.[4]

Thereafter, the brothers subdued Almedia and Franco and placed them in the back of the prison transport van.  Nava-Sotelo left the scene in his pick-up truck while Oswaldo drove off in the van.  Law enforcement officers pursued both vehicles.  The officers, using a tire spike device, punctured one of the van's tires.  Rather than surrender, Oswaldo shot himself to death in the van.  Officers also deployed a tire spike device in the path of Nava-Sotelo's truck, disabling it. Nava-Sotelo was subsequently arrested.

Nava-Sotelo was charged with two counts of kidnaping an officer or employee of the United States while in the performance of official duties in violation of 18 U.S.C. § 1201(a)(5) (Counts 1 and 2); two counts of assault on an officer or employee of the United States while in the performance of official duties in violation of 18 U.S.C. § 111(a)(1) and (b) (Counts 3 and 4); one count of possession, use, or discharge of a firearm during a crime of violence in violation

---

[3] Two days prior to the incident, acting on instructions from Oswaldo, Nava-Sotelo met with an unknown individual who provided him with a map, directions to a doctor's office in Las Cruces and a bag.  Inside the bag was a pistol, a stun gun, handcuffs, a handcuff key and duct tape.

[4] The district court found that Nava-Sotelo never pointed the firearm towards the victims during the incident.

of 18 U.S.C. § 924 (c)(1)(A)(iii) (Count 5); and one count of instigating or assisting an escape of a federal inmate in violation of 18 U.S.C. § 752(a) (Count 6). On September 20, 2001, he pled guilty to all six counts.

Prior to sentencing, the district court held a three-day evidentiary hearing to address the numerous issues raised by Nava-Sotelo in his objections to the presentence report and sentencing memorandum. Among those issues, and relevant to this appeal, was the nature and extent of the mandatory minimum sentence requirements of § 924(c). Nava-Sotelo argued then, as he argues now, that he should receive only a seven-year consecutive sentence on Count 5, rather than a ten-year sentence, because the discharge of the firearm was accidental and involuntary. The district court agreed. Accordingly, on October 21, 2002, Nava-Sotelo was sentenced to thirty-seven months imprisonment on Counts 1, 2, 3, 4 and 6, all to run concurrently with each other, and eighty-four months imprisonment on Count 5, to run consecutive to the sentences imposed in Counts 1, 2, 3, 4 and 6.[5] The government appealed as to Count 5. We have jurisdiction

_____

[5] In arriving at Nava-Sotelo's sentence, the district court granted a two-level enhancement for reckless endangerment and a three-level enhancement based on the victims being law enforcement officers. The district court denied Nava-Sotelo's request for a two-level reduction for minor role but granted him a six-level downward departure based on a combination of "exceptional" mitigating factors, including family circumstances, incomplete duress, lesser harms, community support and civic, charitable and public service. The district court set forth the bases for Nava-Sotelo's sentence in an extensive thirty-three page Memorandum Opinion and Order, dated November 1, 2002. Despite the diverse

-4-

under 18 U.S.C. § 3742(b)(1) and 28 U.S.C. § 1291.

## II. Discussion

For purposes of this appeal the government accepts the district court's factual finding that the discharge of the firearm was accidental, even involuntary. Nonetheless, it insists the language of § 924(c) plainly requires the district court to impose a ten-year consecutive sentence; whether the discharge of the firearm was intentional or accidental is of no moment. We agree.

"We review [a] district court's interpretation of a criminal statute de novo." *United States v. Romero*, 122 F.3d 1334, 1337 (10th Cir. 1997) (citing *United States v. Rothhammer*, 64 F.3d 554, 557 (10th Cir.1995)) *cert. denied*, 523 U.S. 1025 (1998). "In interpreting a statute, we begin with the plain language of the statute itself." *Id.* (citing *United States v. Green*, 967 F.2d 459, 461 (10th Cir. 1992)). "If the terms of the statute are unambiguous, our inquiry ends." *Id.*

Section 924(c) provides in relevant part:

> (c)(1)(A) Except to the extent that a greater minimum sentence is otherwise provided by this subsection or by any other provision of law, any person who, during and in relation to any crime of violence . . . for which the person may be prosecuted in a court of the United States, uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm, shall, in addition to the punishment provided for such crime of

sentencing issues presented to the district court, the only issue on appeal is whether the district court erred in not imposing a ten-year consecutive sentence on Count 5.

violence . . . –

(i) be sentenced to a term of imprisonment of not less than 5 years;

(ii) if the firearm is brandished, be sentenced to a term of imprisonment of not less than 7 years; and

(iii) if the firearm is discharged, be sentenced to a term of imprisonment of not less than 10 years.

. . .

(D) Notwithstanding any other provision of law–

. . .

(ii) no term of imprisonment imposed on a person under this subsection shall run concurrently with any other term of imprisonment imposed on the person, including any term of imprisonment imposed for the crime of violence or drug trafficking crime during which the firearm was used, carried, or possessed.

Under its plain language, § 924(c) does not require a defendant to knowingly or intentionally discharge the firearm. But that does not dispose of the issue raised by Nava-Sotelo – whether scienter is, necessarily, implied.

Nava-Sotelo relies on three Supreme Court cases to support his argument that for sentencing purposes a mens rea requirement must be read into the brandishing and discharge provisions of § 924(c). In *Staples v. United States*, 511 U.S. 600, 605-06 (1994), the Supreme Court noted that offenses lacking a mens rea element are disfavored and "some indication of congressional intent, express

or implied, is required to dispense with [it] as an element of a crime." It then implied a mens rea element in the National Firearms Act, holding that the government must prove a defendant knew his firearm had the requisite characteristics to bring it within the statutory definition of a machine gun. In doing so, the Court recognized the common law presumption favoring mens rea in criminal statutes. *Id.* In *Liparota v. United States*, 471 U.S. 419, 423-24 (1985), and *Morissette v. United States*, 342 U.S. 246, 248, 270-71 (1952), the statutes at issue specified a mens rea but were unclear as to which elements of the offense it applied. In each case, the Supreme Court rejected the government's interpretation of the statute because its interpretation would result in criminalizing otherwise innocuous conduct.

Faithful to that reasoning we have included knowledge as an implied **element** of § 924(c). *United States v. Dahlman*, 13 F.3d 1391, 1400 (10th Cir. 1993), *cert. denied*, 511 U.S. 1045 (1994). Therefore, to establish a violation of § 924(c), the government must prove the following: (1) the defendant committed a drug trafficking offense or crime of violence; (2) the defendant *knowingly* used or carried a firearm, and (3) the defendant used or carried the firearm "during and in relation to" the commission of the crime. *See United States v. McKissick*, 204 F.3d 1282, 1292 (10th Cir. 2000); *United States v. Shuler*, 181 F.3d 1188, 1189-90 (10th Cir.1999); *United States v. Lampley*, 127 F.3d 1231, 1240 (10th

Cir.1997) (emphasis added), *cert. denied*, 522 U.S. 1137 (1988). Seeking to exploit this precedent, Nava-Sotelo asks us to engraft the implied mens rea element onto the sentencing provisions [brandishing and discharge] of § 924(c)(1). He is shoveling sand against the tide because the Supreme Court has specifically held that § 924(c)'s brandishing and discharge provisions are "sentencing factors to be found by the judge, not offense elements to be found by the jury." *Harris v. United States*, 536 U.S. 545, 556 (2002). As a result, no mens rea is required. Our decision in *United States v. Eads,* 191 F.3d 1206 (10th Cir. 1999), *cert. denied*, 530 U.S. 1231 (2000), is compelling.

Eads, like Nava-Sotelo, was convicted of using or carrying a firearm in connection with a drug trafficking offense or crime of violence under § 924(c). *Id*. at 1208-09. The district court imposed a thirty-year sentence for this conviction based on 18 U.S.C. § 924(c)(1)(B)(ii), which provides a thirty-year mandatory minimum sentence if the firearm possessed is a machine gun.[6] *Id.* at

---

[6] Section 924(c)(1)(B) provides:

If the firearm possessed by a person convicted of a violation of this subsection--

(i) is a short-barreled rifle, short-barreled shotgun, or semiautomatic assault weapon, the person shall be sentenced to a term of imprisonment of not less than 10 years; or

(ii) is a machinegun or a destructive device, or is equipped with a firearm silencer or firearm muffler, the person shall be sentenced to a

1212. On appeal, the defendant argued that the district court erred in imposing a thirty-year sentence pursuant to this statute absent a finding that he *knew* one of the firearms he possessed was a machine gun. *Id.* We concluded the type of firearm used or carried under § 924(c) was a sentencing enhancement rather than an element of the offense and, therefore, a separate mens rea for the type of weapon need not be proven.[7] *Id.* at 1213-14.

The same is true in this case. Because the brandishing and discharge provisions of § 924(c) are sentencing factors, not elements, the government was not required to show that Nova-Sotelo knowingly or intentionally discharged his weapon. Accountability is strict; the mere fact that the weapon discharged is controlling.[8] Other circuits have reached the same result in similar circumstances. *See, e.g., United States v. King*, 345 F.3d 149, 153 (2nd Cir. 2003) ("[D]rug dealers convicted under [21 U.S.C.] § 841(a) need not know the type and quantity of drugs in their possession in order to be subject to sentencing enhancements contained in § 841(b)."); *United States v. Gonzalez*, 262 F.3d 867, 870 (9th Cir.

term of imprisonment of not less than 30 years.

[7] Although we made an alternative finding in the event that the type of firearm was an element of a § 924(c) offense, it appears from the Supreme Court's subsequent decision in *Harris*, we were not required to do so. *Id.* at 1214.

[8] Nava-Sotelo urges that *Eads* ought not be read so broadly as to impose strict liability on him. In doing so he ignores the distinction between sentencing factors and elements of an offense. Only the latter requires a mens rea.

2001) (rejecting defendant's argument that a mens rea requirement should be applied to the Guidelines; finding two-level enhancement under USSG § 3B1.4 appropriate even if defendant did not know that the individual she used to violate 18 U.S.C. § 472 was a minor); *United States v. Lavender*, 224 F.3d 939, 941 (9th Cir. 2000) ("Sentencing factors . . . are not separate criminal offenses and as such are not normally required to carry their own mens rea requirements."), *cert. denied sub nom.*, 531 U.S. 1098 (2001); *United States v. Schnell*, 982 F.2d 216, 220-21 (7th Cir. 1992) (finding the absence of a mens rea requirement under USSG § 2K2.1(b)(4) constitutional).[9]

Not only is the distinction between elements and sentencing factors clear, but the rationale for implying a mens rea element in criminal statutes is absent when addressing sentencing factors. As the Eleventh Circuit stated: "A sentence enhancement compounds the punishment for the offense, but falls far short of 'criminalizing apparently innocent conduct.'" *United States v. Brantley*, 68 F.3d 1283, 1290 (11th Cir. 1995), *cert. denied*, 516 U.S. 1136 (1996). Because "the § 924(c) defendant . . . has demonstrated a 'vicious will' by committing the

---

[9] Sentencing factors have been treated differently than elements of an offense in other contexts as well. For instance, unless they increase the penalty for a crime beyond the prescribed statutory maximum, sentencing factors, unlike elements of an offense, need not be alleged in the indictment, submitted to the jury or proven beyond a reasonable doubt. *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000).

principal offense . . . the risk of imposing punishment on an innocent actor is absent." *Id.* Likewise, Nava-Sotelo's conduct in carrying and using a loaded firearm in order to kidnap Almedia and Franco and assist his brother's escape amply demonstrates the "vicious will" generally required for criminal convictions. *See Staples*, 511 U.S. at 616-17; *Morissette*, 342 U.S. at 251.

Finally, Nava-Sotelo argues that the rule of lenity favors his reading of the statute. In doing so he ignores the universal caveat that the rule of lenity "serves as an aid for resolving an ambiguity; it is not to be used to beget one." *Callanan v. United States*, 364 U.S. 587, 596 (1961). "[T]he rule of lenity is not to be applied where to do so would conflict with the implied or expressed intent of Congress, it provides a time-honored interpretive guideline when the congressional purpose is unclear." *Liparota*, 471 U.S. at 427. In identifying aggravating factors and dictating resulting consequences, Congress has spoken with conspicuous clarity. The rule of lenity has no place here.

### III. Conclusion

The district court erred in neglecting to impose the mandatory ten-year consecutive sentence on Count 5. We **REVERSE** and **REMAND** this case to the district court for resentencing.