[ PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
FEBRUARY 20, 2008
THOMAS K. KAHN
CLERK

_____

No. 06-14918

_____

D.C. Docket No. 04-00072-CR-HLM-4

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

CHRISTOPHER MICHAEL DEAN,
RICARDO CURTIS LOPEZ,

Defendants-Appellants.

_____

Appeals from the United States District Court
for the Northern District of Georgia

_____

**(February 20, 2008)**

Before HULL and PRYOR, Circuit Judges, and MOORE,[*] District Judge.

_____

[*]Honorable K. Michael Moore, United States District Judge for the Southern District of
Florida, sitting by designation.

MOORE, District Judge:

There are two main issues involved in this appeal. First, this Court reviews whether there was sufficient evidence to convict codefendants Christopher Michael Dean and Ricardo Curtis Lopez ("Appellants") for conspiracy to interfere with interstate commerce by robbery in violation of the Hobbs Act, 18 U.S.C. § 1951(a). Second, this Court also examines whether 18 U.S.C. § 924(c)(1)(A)(iii), a sentencing enhancement for discharge of a firearm, includes an intent element. Lopez also raises separate issues involving a claimed erroneous jury instruction and the consolidation of his juvenile offenses.

Appellants claim insufficient evidence was presented as to the victim bank's Federal Deposit Insurance Corporation insured status. However, 18 U.S.C. § 1951(a), unlike 18 U.S.C. § 2113, requires no such proof. Consequently, the government needed to prove only that Dean and Lopez committed a robbery that had an effect on interstate commerce. The government met this burden through the testimony of an AmSouth Bank branch manager; consequently, we deny Dean and Lopez's § 1951(a) insufficient evidence argument.

Further, given that § 924(c) is a sentencing enhancement, not an element of an offense, this Court holds that § 924(c)(1)(A)(iii) does not contain a separate intent requirement. The mere discharge of a firearm during any crime of violence or drug trafficking, even accidental, is subject to the sentencing enhancement

2

requiring a minimum of ten additional years of imprisonment. Therefore, Appellants' discharge of firearm argument is likewise denied.

## I.BACKGROUND

Dean and Lopez were brothers-in-law who cohabitated at the Hidden Glen complex, which is located in or around Rome, Georgia. According to the testimony of Jimmy Tanner, the former manager of AmSouth Bank's Rome, Georgia branch, on November 10, 2004, a masked man entered the bank around 10:00 a.m. The individual, later identified as Christopher Michael Dean, through his own confession, carried a pistol and yelled at everyone to get on the ground. Dean approached the teller stations, opened the security gate, and gained access to the teller area. Once inside the teller area, Dean removed bills of currency from the drive-through teller drawer with his left hand, while holding the pistol with his right hand. Next, Dean approached the head teller station. The head teller was on her knees below the station. Dean reached over the crouched teller and with his left hand started taking money from the teller drawer. As he was grabbing the money, Dean discharged the gun in his right hand, leaving a bullet hole in the partition between the two teller work stations. Upon discharge, Dean cursed himself as if the shot was inadvertent. Immediately after the shot, Dean grabbed as much money as he could from the head teller drawer and ran out of the bank.

Manager Tanner observed Dean exit the bank and enter a silver Ford Taurus without licence plates. In all, Dean stole $3,642.00.

Through further trial testimony, it was established that AmSouth Bank is headquartered outside of Georgia in Birmingham, Alabama. After the robbery, the Rome, Georgia branch remained closed for the remainder of the day. Also during the course of Tanner's trial testimony, the government moved for admission of AmSouth's FDIC certification, which revealed that AmSouth operated in numerous states and was FDIC insured. Defense counsel objected and argued that the certificate was testimonial and not self-authenticating. The document was admitted over objection.

After their arrest, both Lopez and Dean, at different times, claimed responsibility for the robbery. The government maintained that the evidence supported finding that Dean and Lopez conspired to rob AmSouth based upon (1) their cohabitation; (2) joint drug debt; (3) Lopez's knowledge of the robbery's factual details; (4) and Lopez's possession of the firearm used in the bank robbery. Ultimately, the jury found both Dean and Lopez guilty of conspiring to interfere with interstate commerce by robbery, in violation of the Hobbs Act, 18 U.S.C. § 1951(a) (count one); and aiding and abetting each other in the discharge of a pistol during an armed robbery, in violation of 18 U.S.C. § 924(c)(1)(A)(iii) and 18 U.S.C. § 2 (count two). The district court sentenced Dean to 100 months as to

4

count one and 120 months as to count two, consecutive to count one, whereas Lopez was sentenced to 78 months on count one and 120 months as to count two, consecutive to count one.

## II.STANDARDS OF REVIEW

This Court reviews the first issue, sufficiency of the evidence for Appellants' Hobbs Act violations, under a de novo standard of review.  See United States v. Yates, 438 F.3d 1307, 1311 (11th Cir. 2006).  The Court also employs a de novo standard of review in analyzing the district court's legal conclusion that 18 U.S.C. § 924(c)(1)(A)(iii) did not contain a separate mens rea requirement. King v. Moore, 312 F.3d 1365, 1366 (11th Cir. 2002).

## III.DISCUSSION

Appellants each contend that the government failed to prove that AmSouth's deposits were insured by the FDIC, which they maintain requires this Court to vacate their convictions.  In support of their argument, Appellants claim that exhibit 6, which is the FDIC certification and affidavit of the Assistant Secretary of the FDIC, was testimonial evidence admitted in violation of the Confrontation Clause as set forth in Crawford v. Washington, 541 U.S. 36 (2004).

To obtain a conviction for conspiring to interfere with interstate commerce through robbery, in violation of the Hobbs Act, 18 U.S.C. § 1951(a), the

5

government need only prove a robbery and effect on commerce. United States v. Rodriguez, 218 F.3d 1243, 1244 (11th Cir. 2000) (holding "[t]wo elements are essential for a Hobbs Act Prosecution: robbery and an effect on commerce"). At trial, Dean admitted to committing the robbery; thus, the only remaining issue is whether the government sufficiently proved that the robbery affected commerce. Appellants argue that the government did not meet its burden in proving an effect on commerce because the FDIC certificate and supporting affidavit were improperly admitted.

Before turning to the issue of its admissibility, we address whether the FDIC certificate was even necessary to prove a Hobbs Act violation. As discussed supra, a Hobbs Act violation requires proof of a robbery and an effect on commerce. Id. To prove an effect on commerce, however, the government is only required to establish "a minimal effect on interstate commerce." Id. This Court has held that a "mere depletion of assets" is sufficient proof of an effect on interstate commerce. Id.

AmSouth Branch Manager Tanner testified that AmSouth's headquarters were located outside the state of Georgia in Birmingham, Alabama. Tanner also stated the Rome, Georgia branch remained closed following Dean's 10:00 a.m. robbery of $3,642.00. The robbery forced the Rome branch to close and prevented any additional patrons from transacting business for the remainder of the day.

6

This case is similar to United States v. Guerra, where an individual stole $300 dollars from a service station, which was subsequently forced to close for two hours. There, this Court found an effect on interstate commerce and labeled the case a "classic 'depletion of assets' scenario." 164 F.3d 1358, 1361 (11th Cir. 1999). In Rodriguez, this Court found an effect on commerce where the perpetrator had robbed a motel because some of the motel guests were from out of state. 218 F. 3d at 1244. Given our Hobbs Act sufficiency of evidence jurisprudence, the government's evidence, which included the stealing of $3,642.00 from a bank with interstate branches and that is open to out of state customers, was sufficient to establish an effect on commerce. Further, the stealing of the money depleted AmSouth's cash reserve and thereby affected commerce. This evidence was sufficient to sustain Appellants' convictions for violation of 18 U.S.C. § 1951(a).

Appellants argue that the FDIC certificate and accompanying affidavit were improperly admitted in violation of the Confrontation Clause. Proof of a Hobbs Act violation does not require proof of FDIC insurance. FDIC insured status is an element of armed bank robbery under 18 U.S.C. § 2113, but not of 18 U.S.C. § 1951(a). See Poole v. United States, 832 F.2d 561, 564-65 (11th Cir. 1987). Appellants claim that United States v. Sandles requires reversal based upon the government's alleged erroneous use of the FDIC certificate and accompanying

7

affidavit. 469 F.3d 508 (6th Cir. 2006). The situation in <u>Sandles</u> is inapposite because there the defendant was charged with armed bank robbery, which, as stated above, requires proof of FDIC insurance. Therefore, it is not necessary for this Court to address Appellants' Confrontation Clause claim surrounding admission of the FDIC certificate and affidavit. Even if the FDIC certificate and affidavit were admitted in error, the error was harmless, as no proof of FDIC insured status was needed and the government provided separate evidence establishing the Hobbs Act violation. <u>See</u> <u>United States v. Ndiaye</u>, 434 F.3d 1270, 1286 (11th Cir. 2006) (stating "denial of a defendant's Confrontation Clause right to cross-examination is examined for harmless error").

Furthermore, Appellant Lopez argues that proof of FDIC insured status was necessary for the government to meet its burden with respect to the Hobbs Act's effect on commerce prong. A bank's FDIC status could be relevant to the effect on commerce inquiry, <u>see</u> <u>United States v. Spinello</u>, 265 F.3d 150, 156-57 (3d Cir. 2001) (bank robbery case), but it is not required here. As discussed above, a mere depletion of assets is sufficient to prove an effect on commerce. Here, the depletion was proven; consequently, proof of FDIC insured status was not necessary because the trial testimony established depletion of assets, bank closure, and out of state branches, which proved the requisite effect on commerce.

Appellants next claim that 18 U.S.C. § 924(c)(1)(A)(iii) requires that the

8

sentencing enhancement for discharge of a firearm applies only to intentional firearm discharges. Testimony at trial supports Dean's assertion that the discharge of the firearm inside the bank was a surprise even to Dean and, thus, was likely accidental. Our Court has not squarely addressed in any published opinion whether a firearm discharge must be intended before the sentencing enhancement is applicable. We now hold that nothing in the language of the statute requires separate proof of intent before applying the sentencing enhancement.

Section 924(c)(1)(A)(iii) is a sentence enhancement and merely reflects factors that will enhance sentencing, not elements of an offense. Harris v. United States, 536 U.S. 545, 556 (2002). Section 924(c)(1)(A)(iii) states in pertinent part, "any person who . . . uses or carries a firearm . . . shall, in addition to the punishment provided for such crime of violence or drug trafficking crime[,]– (iii) if the firearm is discharged, be sentenced to a term of imprisonment of not less than 10 years." The plain language of § 924(c)(1)(A)(iii) requires only a person to "use[] or carr[y] a firearm" to be subject to the sentence enhancement; there is no reference to any mens rea requirement. Looking to our case law, we analyzed a similar mens rea sentencing enhancement claim in United States v. Brantley, 68 F.3d 1283, 1290 (11th Cir. 1995).

Brantley involved possession of a semi-automatic firearm that, unbeknownst to its carrier, had been illegally altered into a fully automatic

9

weapon. Id. at 1289. This Court held that the carrier had to have known of the firearm's altered status to be found guilty of carrying an illegal firearm under 26 U.S.C. § 5861(d). Id. at 1290. We, however, found that the defendant's conviction under § 924(c) did not require any separate intent. Id. This Court differentiated the intent requirements of § 5861 and § 924(c) because it was concerned that removing the mens rea requirement from § 5861 could punish an innocent individual who did not realize the firearm was prohibited. We did not have the same fear of punishing an unknowing individual under § 924(c) because imposition of that sentence enhancement first demands the government prove the defendant engaged in an underlying violent or drug trafficking crime, which will have its own mens rea requirement. Id. at 1289-90 (stating "unlike the law abiding individual who unknowingly comes into possession of an illegal firearm, the §924(c) defendant whose sentence is enhanced based upon the type of weapon he carried has demonstrated a 'vicious will' by committing the principal offense").

In addition to our Brantley decision, this Court is also persuaded by the Tenth Circuit's reasoning in United States v. Nava-Sotelo, 354 F.3d 1202 (10th Cir. 2003). In that case, the brother of an inmate attempted to rescue the inmate on his way back from receiving dental treatment outside of the prison. Id. at 1203. In a struggle between the defendant and one of the prison transporting officers, the prison officer grabbed the defendant's gun and as the two were fighting over it, the

10

defendant accidentally discharged the weapon into the ground.  Id.  The Tenth

Circuit supported its finding that § 924(c)(1)(A)(iii) did not have an additional

mens rea requirement by finding the plain language of the statute did not include

any requirement of intent.  Id. at 1207.  Further, the Tenth Circuit stated §

924(c)(1)(A)(iii) lists sentencing enhancements, not elements of an offense, and

when the underlying offense requires a vicious will the danger of imposing

punishment upon an innocent party is absent.  Id.  Given this reasoning, the Nava-

Sotelo Court succinctly concluded "[a]ccountability is strict; the mere fact that the

weapon discharged is controlling."  Id. at 1206.

Appellants urge this Court to adopt the D.C. Circuit's reasoning in United

States v. Brown, 449 F.3d 154 (D.C. Cir. 2006), which found § 924(c)(1)(A)(iii)

did require intent to discharge in order for a defendant to receive the ten year

sentencing enhancement.  The D.C. Circuit found that the three subsections of §

924(c) worked in concert to impose increasingly heavier penalties as the

defendant's conduct became more egregious.  Id. at 156.  The D.C. Circuit,

therefore, reasoned that § 924(c)(1)(A)(iii) [discharge] must contain an intent

requirement because it contains a harsher penalty than § 924(c)(1)(A)(ii)

[brandishing].  Id.  This reasoning is not persuasive because discharging a firearm,

regardless of intent, presents a greater risk of harm than simply brandishing a

weapon without discharging it.  The penalty is an enhancement for conduct that

11

occurred, not intent. The D.C. Circuit also found a mens rea requirement because of the general presumption against strict liability in criminal statutes. This reason is equally unpersuasive as there is a distinction between elements of an offense and sentencing enhancements for conduct during perpetration of a violent criminal act.

Here, despite the evidence that Dean accidentally discharged his pistol during the AmSouth robbery, the district court correctly found that he remained subject to the § 924(c)(1)(A)(iii) sentencing enhancement. Consistent with our reasoning in Brantley, Appellants had the vicious will to conspire to commit the underlying crime of robbery in violation of the Hobbs Act, which ensures that they are not innocent individuals unfairly held to a strict liability offense. Finally, adopting the Tenth Circuit's reasoning, Dean's mere discharge of the pistol is controlling. Therefore, the district court did not err in holding that § 924(c)(1)(A)(iii) lacks a separate mens rea requirement.

On appeal, Lopez levied two additional arguments not raised by his codefendant. First, Lopez claims that the district court's jury instruction created an unconstitutional mandatory presumption. Second, he argues that the district court erroneously found that his prior juvenile armed robbery convictions were not functionally consolidated.

Lopez raises his objection to the district court's jury instruction for the first

time on appeal; consequently, this Court reviews the instruction for plain error. United States v. Vasquez, 53 F.3d 1216, 1221 (11th Cir. 1995). Further, we must review the challenged jury instruction in its entirety. United States v. Myers, 972 F.2d 1566, 1573 (11th Cir. 1992).

Lopez finds error with the district court's following instruction: "You may find the requisite effect upon interstate commerce has been proven if you find beyond a reasonable doubt that the bank described in the indictment was engaged in doing business both within and without the state of Georgia." Lopez contends that this jury instruction lowers the standard of proof by creating the mandatory presumption that the robbery of the Rome, Georgia branch affected interstate commerce.

A jury instruction which creates a burden shifting presumption or a conclusive presumption deprives a defendant of his right to the due process of the law. See Sandstrom v. Montana, 442 U.S. 510, 524 (1979). An instruction must not relieve the government of its burden of proving each and every element of an offense. Id. "The threshold inquiry in evaluating whether a jury instruction impermissibly shifts the burden of proof is whether the instruction is a permissive inference or a mandatory presumption." Baxter v. Thomas, 45 F.3d 1501, 1509 (11th Cir. 1995). Further, "[a] permissive presumption merely allows an inference to be drawn and is constitutional so long as the inference would not be irrational."

13

Id. This Court, in Myers, held a permissive inference permits the jury to make an inference from the evidence proven by the prosecution, but does not mandate any such finding. United States v. Myers, 972 F.2d 1566, 1573 (11th Cir. 1992) (stating "[t]he district court explicitly informed the jury that it 'may' infer that a person ordinarily intends all the natural and probable consequences of an act . . . . This circuit has approved similar jury instructions that allow the jury to infer intent from the natural and probable consequences of any act.").

In the instant case, the district court similarly instructed the jury that it "may" find an effect upon interstate commerce. Id. The court did not create a mandatory presumption through the use of unqualified language such as must or shall. The court also did not relieve the prosecution of its burden because it still required the jury to "find beyond a reasonable doubt that the bank described in the indictment was engaged in doing business both within and without the state of Georgia." The government put into evidence the testimony of Branch Manager Tanner that revealed AmSouth's out of state headquarters and its half-day closure, which provided the jury with the opportunity to reasonably infer an effect upon interstate commerce. Further, the instruction resembles the one we previously upheld in Myers. Accordingly, this Court finds that the challenged instruction created a permissive inference, did not relieve the prosecution of proving each and every element beyond a reasonable doubt, and, thus, did not constitute plain error.

14

Defendant Lopez pled guilty to four counts of armed robbery in the Georgia juvenile court system. Lopez committed five armed robberies over a span of four days in late July, 1997. After the final robbery, Lopez was arrested and charged separately for the four crimes.[1] Each charge of armed robbery was assigned a separate case number, but one lawyer represented Lopez in each case and a single plea agreement was reached covering all four offenses. In addition, the juvenile court imposed a single sentence for all four robberies at one proceeding. Lopez, based upon these facts, argues his underlying armed robbery adjudications were functionally consolidated and the district court should have treated them as related cases under U.S.S.G. § 4A1.2, Application Note 3(C).

In calculating Lopez's criminal history score, the probation officer assessed two criminal history points for each of the four juvenile armed robberies. These eight points, along with a single point for an adult battery conviction, gave Lopez a total criminal history score of nine, which establishes a criminal history category of IV. Based upon his criminal history category and total offense level, Lopez's guideline range, as to count one, was 77-96 months. On count one, the district court sentenced Lopez to 78 months imprisonment. At sentencing, the district court judge also stated that he still would have imposed a term of 78 months

---

[1]Two of the robberies were charged in a single petition, which made the two charges proper for consolidation as one armed robbery.

imprisonment as a reasonable sentence, regardless of any guidelines miscalculation, because of the facts of the case and defendant's misleading and shifting testimony offered in an effort to hide the truth. Lopez contends that he should have received only two points for the four armed robberies because he was sentenced only once. This one robbery charge, in addition to the adult battery charge, would have given him a criminal history score of 3, a criminal history category of II, and a guideline range of 57-71 months.

This Court need not address Lopez's specific arguments surrounding the alleged failure to consolidate his juvenile offenses because, as we held in United States v. Keene, where the district court imposes a reasonable sentence and states that it would impose the same sentence irrespective of any sentencing calculation errors, this Court will uphold the sentence rather than "send the case back to the district court since it has already told us that it would impose exactly the same sentence, a sentence we would be compelled to affirm." 470 F.3d 1347, 1350 (11th Cir. 2006).

Here, like Keene, the district court stated it would have imposed 78 months as a reasonable sentence based on the 18 U.S.C. § 3553(a) imposition of a sentence factors. According to our decision in Keene, the relevant analysis is as follows: "the question then is whether the [78-month] sentence the court imposed is reasonable, assuming exactly the same conduct and other factors in the case, but

16

using an advisory range of [57-71] months."[2] 470 F.3d at 1350. In this case, Lopez's 78-month sentence was reasonable under the § 3553(a) factors because his criminal record and current offense show a disregard for the law, obstruction of justice and falsity, danger to the public, and a need to deter future transgressions. Therefore, the district court's imposition of Lopez's 78-month sentence was reasonable and stands despite the disputed guidelines issue.

## IV.CONCLUSION

The district court judgment is **AFFIRMED**.

---

[2] This analysis assumes that the district court should have awarded Lopez a criminal history score of 3, which would have generated a criminal history category of II, leaving him with a guideline range of 57-71 months imprisonment.