[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 17-10429
Non-Argument Calendar
_____

D.C. Docket No. 1:16-cr-20487-WPD-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

JEAN EMMANUEL DUVAL,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(October 3, 2017)

Before HULL, JULIE CARNES and JILL PRYOR, Circuit Judges.

PER CURIAM:

After a jury trial, defendant Jean Duval appeals his convictions and total 21-month sentence for three counts of making a false statement in connection with the acquisition of a firearm, in violation of 18 U.S.C. § 922(a)(6).  As to his convictions, Duval argues that the government failed to prove that he made a false statement on the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF") forms he filled out when buying the firearms.  As to his sentence, Duval argues that the district court improperly applied an eight-level enhancement under U.S.S.G. § 2K2.1(a)(4)(B) and that his sentence is substantively unreasonable.  After review, we affirm.

## I.  SUFFICIENCY OF THE EVIDENCE

We review <u>de novo</u> the sufficiency of the evidence to support a conviction, viewing all evidence and drawing all inferences in favor of the verdict.  <u>United States v. Isaacson</u>, 752 F.3d 1291, 1303 (11th Cir. 2014).  We will not overturn a jury's verdict "if any reasonable construction of the evidence would have allowed the jury to find the defendant guilty beyond a reasonable doubt."  <u>United States v. Grzybowicz</u>, 747 F.3d 1296, 1304 (11th Cir. 2014) (quotation marks omitted).

## A.     18 U.S.C. § 922(a)(6) Offenses

To sustain a conviction under 18 U.S.C. § 922(a)(6), the government must prove beyond a reasonable doubt that: (1) the defendant knowingly made; (2) a false or fictitious written statement in connection with the purchase of firearms;

2

(3) intended to deceive or likely to deceive a licensed firearms dealer; (4) and the false statement was a fact material to the lawfulness of the sale or disposition of the firearm. United States v. Ortiz, 318 F.3d 1030, 1036 (11th Cir. 2003). Here, Duval challenges only the second element, contending that the government presented insufficient evidence that he made a false statement when he indicated on ATF Form 4473 that he was the "actual buyer" of the ten firearms, as charged in Counts 2, 3, and 4.

Under § 922(a)(6), the identity of the buyer is a fact material to the lawfulness of the sale of a firearm. Id. at 1037; see also United States v. Frazier, 605 F.3d 1271, 1279 (11th Cir. 2010). Consequently, § 922(a)(6) applies to "straw purchases" of firearms from federally licensed firearms dealers. Frazier, 605 F.3d at 1279. A straw purchase occurs when an intermediary, called "the straw," buys the firearm for someone else. Abramski v. United States, ___ U.S. ___, 134 S. Ct. 2259, 2266-68 (2014). In a straw purchase, the "actual buyer" for § 922(a)(6) purposes is the person for whom the straw is buying the firearm, and the identity of the actual buyer is material, regardless of whether the actual buyer is legally eligible to own a firearm. Id. at 2267-69, 2272-74; Frazier, 605 F.3d at 1279-80. Thus, any time a straw purchaser is buying a firearm from a federally licensed firearms dealer and states on ATF Form 4473 that he is the "actual buyer," he violates § 922(a)(6). Frazier, 605 F.3d at 1280, Ortiz, 318 F.3d at 1036-37.

3

**B.    Trial Evidence**

Here, the government presented sufficient evidence from which the jury could find beyond a reasonable doubt that Duval, on three occasions and in connection with the purchase of ten firearms from federally licensed firearms dealers, falsely stated on ATF Form 4473 that he was the actual buyer of the firearms because he fully intended to resell those firearms to other individuals, primarily a man named D-Dog.

According to the trial evidence, over a two-week period, from February 25, 2016 to March 9, 2016, Duval bought fourteen 9mm pistols from three federally licensed firearms dealers.[1]  Each time, Duval indicated on the ATF Form 4473 that he was the actual buyer of the pistols.  Duval spent a total of $5,600 in cash on the firearms, although he had earned only $5,686 during the first quarter of 2016.  Moreover, Duval, who worked as an unarmed security guard at Universal Protection Services, failed to report to work on February 22, 2016, just days before he began buying the firearms.

When ATF agents first met with Duval on April 7, 2016, to ask him about his multiple firearms purchases, Duval's story changed several times.  First, Duval said he had purchased five firearms with his $5,000 income tax refund and that he still had the firearms in his residence.  Later, Duval stated that he had purchased

---

[1]The jury acquitted Duval of making a false statement in connection with the purchase of four firearms, as charged in Count 1.

between 10 and 12 firearms, but he had sold some of them.  At one point, Duval admitted he was selling three or four firearms a week to his friends and to friends of his friends.  Duval told the agents he had prepared bills of sale that the agents could view at his home.  When the ATF agents proposed going to Duval's home to inspect the guns and bills of sale, however, Duval admitted that he had sold all but one of the firearms.

At a second meeting at Duval's home on April 11, 2016, Duval told ATF agents he could not find the bills of sale and could produce only one firearm.  Duval said he had sold a Taurus pistol to a man named D-Dog for $425.  Duval admitted that he sold several firearms to unnamed purchasers in store parking lots, and then sold the remainder of the firearms "through D-Dog."  Duval also admitted that he continued to buy firearms to resell them because he needed to make a profit and that "people on the streets always need guns."  Although Duval admitted buying the firearms to resell them, he denied buying the firearms for a particular person.

On June 27, 2016, in a post-arrest interview, Duval claimed that he purchased the firearms for himself, but that after he was terminated from Universal, he had to sell the firearms for financial reasons.  This statement was inconsistent with the fact that Duval left his job at Universal of his own accord on February 22, 2016, before he began to purchase the firearms on February 25, 2016.

5

Duval explained to the ATF agents that he knew D-Dog from school. Duval met D-Dog "on the streets" and D-Dog saw one of Duval's guns. D-Dog said he wanted to purchase one. Duval asked D-Dog if he was a felon, and when D-Dog said he was not, Duval sold him a gun. When D-Dog said he knew other people who also wanted guns, Duval arranged through D-Dog to meet those people in store parking lots to make the firearm transactions, and then gave D-Dog a little bit of money out of the proceeds.

From this evidence, the jury could reasonably find that Duval was acting as a straw purchaser, buying and delivering firearms at D-Dog's request for other people D-Dog knew wanted firearms or for other buyers "on the streets." Although Duval told agents that he initially purchased the firearms for himself and only later decided to sell them due to financial necessity after he lost his job, the jury was free to disbelieve Duval, which it clearly did. See United States v. Williams, 390 F.3d 1319, 1323 (11th Cir. 2004) (explaining that the jury is free to choose between reasonable constructions of the evidence, and this Court must construe credibility choices to support the jury's verdict). Among other things, Duval quit his job at Universal on February 22, 2016, before he began purchasing the firearms on February 25, 2016. Although Duval claimed to have financial problems, he spent his entire $5,000 tax refund, as much as he had earned in the last three months, on the firearms. And, all fourteen firearms were 9mm pistols. A

6

reasonable jury could infer from this evidence that Duval was not purchasing the firearms for his own collection, particularly since he bought duplicates of several firearms. Finally, Duval admitted to ATF agents during informal interviews that he bought firearms to resell them and that he sold most of the firearms "through D-Dog."

Further, there were other inconsistencies in Duval's statements to ATF agents that a reasonable jury could have considered as substantive evidence of his guilt. See United States v. Hughes, 840 F.3d 1368, 1385 (11th Cir. 2016), cert. denied, 137 S. Ct. 1354 (2017) (explaining that a statement by a defendant, including a pre-trial exculpatory statement, if disbelieved by the jury, may be considered substantive evidence of his guilt). Duval's own story changed several times as he was questioned by the agents.[2] Although Duval told the agents that he purchased the firearms with his tax refund, he purchased six firearms in February 2016, before he received his tax refund in March 2016. While Duval consistently stated that he had not purchased the firearms for anyone else, he also told the

_____

[2]Duval points out that the two pre-arrest interviews were not recorded. But we must assume the jury answered all credibility questions in favor of the verdict and thus that the jury believed the testimony of ATF agents about what Duval said during his unrecorded interviews. See Williams, 390 F.3d at 1323. Further, there is no merit to Duval's claim that his unrecorded interview statements that he planned to resell the firearms were the only evidence of his guilt. Indeed, there was compelling circumstantial evidence, recounted above, that corroborated his interview statements, not least of which was that he quickly resold all but one of the firearms to others.

agents that he continued to buy more firearms after the first sale because he needed to make a profit and "people on the streets always need guns."

From all of this evidence the jury could have reasonably found that Duval purchased the ten firearms, as charged in Counts 2, 3 and 4, either for D-Dog and his associates or with the intent to resell them to others "on the streets," and thus made a false statement on the Form 4473 when he indicated that he was the actual buyer of the firearms.

Duval argues that he was an "actual buyer" as a matter of law because, although he intended to resell the firearms, he had not yet identified a specific buyer when he purchased the firearms. As support, Duval notes that in Abramski, the Supreme Court stated that Congress intended to leave the "secondary market" for firearms largely unregulated. See Abramski, ___ U.S. at ___, 134 S. Ct. at 2271. Duval's is not a situation in which a true buyer later sold his firearms on the secondary market, but rather a sham transaction that essentially asked the dealer to verify the identity of, and run a background check on, the wrong person. See Abramski, 134 S. Ct. at 2275 (explaining that to read the statutory terms "person" and "transferee" in § 922 narrowly would render the provisions of the statute ineffectual "because the identification and background check would be of the wrong person").

Even if Duval was not acting as a classic straw purchaser who is fronted the money for the firearm transaction ahead of time by a specific buyer, his actions nonetheless qualified as a crime under § 922(a)(6) because Duval could only be the "actual buyer" for purposes of Form 4473 if he intended to keep the firearms for himself or to give them as a gift. See Ortiz, 318 F.3d at 1038. The jury reasonably inferred from the trial evidence that Duval did not purchase the firearms for himself or as a gift to another, but rather for the sole purpose of turning around and selling them to another person, even though that person's identity may have been unclear at the time. Thus, Duval's statements on Form 4473 that he was the actual buyer were misrepresentations under § 922(a)(6). See id. (concluding that the defendant misrepresented that he was the actual buyer because at the time he completed the Form 4473 he intended to deliver and sell them to an as-yet unidentified buyer).

## II. REASONABLENESS

"We review the reasonableness of a sentence for an abuse of discretion using a two-step process." United States v. Cubero, 754 F.3d 888, 892 (11th Cir. 2014) (quotation marks omitted). We look first at whether the sentencing court committed any significant procedural error, such as misapplying the guidelines or treating them as mandatory, failing to consider the 18 U.S.C. § 3553(a) sentencing

factors, choosing a sentence based on clearly erroneous facts, or failing to adequately explain the sentence imposed. Id.[3]

Second, we examine whether the sentence is substantively unreasonable in light of the § 3553(a) factors and the totality of the circumstances. Id. The party challenging the sentence bears the burden to show it is unreasonable. United States v. Alvarado, 808 F.3d 474, 496 (11th Cir. 2015). The weight given to any particular § 3553(a) factor is within the district court's discretion, and this Court will not substitute its judgment for that of the district court. Id. We will reverse a sentence only if we are "left with the definite and firm conviction that the district court committed a clear error of judgment in weighing the § 3553(a) factors by arriving at a sentence that lies outside the range of reasonable sentences dictated by the facts of the case." United States v. Pugh, 515 F.3d 1179, 1191 (11th Cir. 2008) (quotation marks omitted).

As to procedural reasonableness, Duval contends the district court misapplied an 8-level enhancement under U.S.S.G. § 2K2.1(a)(4)(B). A defendant's base offense level for prohibited transactions involving firearms is 20

---

[3]The § 3553(a) factors include: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (3) the need for deterrence; (4) the need to protect the public; (5) the need to provide the defendant with needed educational or vocational training or medical care; (6) the kinds of sentences available; (7) the Sentencing Guidelines range; (8) pertinent policy statements of the Sentencing Commission; (9) the need to avoid unwarranted sentencing disparities; and (10) the need to provide restitution to victims. 18 U.S.C. § 3553(a).

if: (1) the offense involved a semiautomatic firearm that is capable of accepting a large capacity magazine or a firearm described in 26 U.S.C. § 5845(a); and (2) the defendant committed the offense with knowledge, intent, or reason to believe that the offense would result in the transfer of a firearm or ammunition to a prohibited person.  U.S.S.G. § 2K2.1(a)(4)(B).  If none of the potential special circumstances apply, a defendant's base offense level is 12.  See id. § 2K2.1(a)(7).

Duval challenges the 8-level enhancement for several reasons, some of which he raised at sentencing and some of which he did not.  Specifically, Duval argues that the 8-level increase did not apply because (1) the nine-millimeter pistols he purchased were not either semiautomatic firearms that were capable of accepting large-capacity magazines or firearms described in 26 U.S.C. § 5845(a); (2) there was insufficient proof that he intended to transfer the firearms to a prohibited person at the time that he purchased them, even if there was sufficient evidence that he had, in fact, sold the firearms to prohibited persons; and (3) there was no evidence as to whom he sold the firearms.

The problem for Duval is that, at sentencing, the district court explicitly stated that regardless of whether the advisory guidelines range was 21 to 27 months (without the 8-level enhancement) or 51 to 63 months (with that enhancement), the district court believed that a 21-month sentence was the appropriate sentence.  We need not decide a guidelines issue or remand for a new

sentencing when the district court, as here, expressly states that it would have imposed the same sentence regardless of its ruling on the guidelines issue, and the sentence would have been reasonable assuming the guidelines issue was decided in the defendant's favor.  See United States v. Dean, 517 F.3d 1224, 1232 (11th Cir. 2008); United States v. Keene, 470 F.3d 1347, 1349-50 (11th Cir. 2006).  "In determining whether [the sentence imposed] is reasonable we must assume that there was a guidelines error—that the guidelines issue should have been decided in the way the defendant argued and the advisory range reduced accordingly—and then ask whether the final sentence resulting from consideration of the § 3553(a) factors would still be reasonable."  Keene, 470 F.3d at 1349.

Here, any error the district court may have made in calculating Duval's base offense level under § 2K2.1(a)(4)(B) was harmless.  See id. at 1348-49.  The district court stated that regardless of whether it imposed the higher base offense level under § 2K2.1(a)(4)(B), it would have imposed a 21-month total sentence. Accordingly, so long as the resulting total sentence was substantively reasonable assuming that the district court erred in calculating the guidelines range, any error by the district court was harmless.  Id. at 1349.  For the reasons that follow, we conclude Duval's 21-month total sentence was substantively reasonable, even if the advisory guidelines range was 21 to 27 months.

The district court explicitly considered several § 3553(a) factors at sentencing, including the nature and circumstances of the offenses, Duval's history and characteristics, and the need for the sentence to reflect the seriousness of the offenses.  The district court also discussed several mitigating factors in Duval's history and characteristics, including Duval's history as a security guard and that he was a first-time offender, law-abiding, and had good character apart from "what he did for a few weeks selling these guns - - buying and selling these guns and lying about it."  The district court stated its belief, however, that Duval was not "buying these guns for collecting or sporting purposes," noted that "the jury's still out" on whether Duval was a danger to the public, and concluded that the non-incarceration sentence Duval requested was not appropriate given the seriousness of his offenses.

Given the extensive discussion of the § 3553(a) factors, there is no indication that the district court failed to consider relevant factors that were due significant weight, gave an improper or irrelevant factor significant weight, or committed a clear error of judgment by balancing the proper factors unreasonably. See United States v. Irey, 612 F.3d 1160, 1189 (11th Cir. 2010) (en banc). Furthermore, the 21-month sentence would have been at the bottom of the assumed guidelines range of 21 to 27 months and was well below the applicable ten-year statutory maximum under 18 U.S.C. § 924(a)(2), both indications of

13

reasonableness.  See United States v. Hunt, 526 F.3d 739, 746 (11th Cir. 2008) (stating that this Court ordinarily expects a sentence within the guidelines range to be reasonable); United States v. Stanley, 739 F.3d 633, 656 (11th Cir. 2014) ("A sentence imposed well below the statutory maximum penalty is an indicator of a reasonable sentence.").  Under the totality of the circumstances, and considering the § 3553(a) factors, we cannot say the district court abused its discretion when it imposed a 21-month sentence, even assuming arguendo the district court erred in applying § 2K2.1(a)(4)(B)'s 8-level enhancement.  Accordingly, Duval's sentence is both procedurally and substantively reasonable.

## III.  CONCLUSION

For these reasons, we affirm Duval's convictions and total 21-month sentence.

**AFFIRMED.**