# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued March 7, 2006　　　　　　　Decided June 2, 2006

No. 04-3159

UNITED STATES OF AMERICA,
APPELLEE

v.

KEVIN PATRICK LUKE BROWN,
APPELLANT

———

Appeal from the United States District Court
for the District of Columbia
(No. 03cr00405-01)

———

*Edward C. Sussman*, appointed by the court, argued the cause and filed the briefs for appellant.

*Steven W. Pelak*, Assistant U.S. Attorney, argued the cause for appellee. With him on the brief were *Kenneth L. Wainstein*, U.S. Attorney, and *Roy W. McLeese III* and *Frederick W. Yette*, Assistant U.S. Attorneys.

Before: RANDOLPH and TATEL, *Circuit Judges*, and WILLIAMS, *Senior Circuit Judge*.

Opinion for the Court filed by *Senior Circuit Judge* WILLIAMS.

WILLIAMS, *Senior Circuit Judge*: Congress has provided a minimum sentence of five years for any person who, in relation to any crime of violence, "uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm." 18 U.S.C. § 924(c)(1)(A)(i). The minimum penalty increases to seven years if the firearm "is brandished," § 924(c)(1)(A)(ii), and to ten if it "is discharged," § 924(c)(1)(A)(iii). The question here is whether the accidental discharge of a weapon triggers a ten-year sentence for discharging. Phrased more formally, the question is whether an intent requirement is implicit in the discharge provision. We conclude that it is.

* * *

The relevant facts are undisputed. About ten minutes before it closed, Kevin Patrick Luke Brown entered a SunTrust bank in downtown Washington, D.C. with a semi-automatic pistol. Brown approached the bank's acting manager and forced her, at gunpoint, to lead him into the locked teller area. Once inside, Brown directed another bank employee to put money from the tellers' drawers into a bag. Irritated because he thought she was moving too slowly, Brown snatched the bag, threw it at another employee, and jammed the barrel of the gun into the back of the second employee's head. That employee then stuffed cash into the bag before handing it back to Brown. As Brown closed the bag, his gun fired. Apparently startled, Brown asked, "Did I hurt anybody? Did I hurt anybody?" The bank employees responded that no one was injured; as it turned out, the bullet had lodged in the bank's ceiling. Brown then forced the second employee, at gunpoint, to direct him to an exit in the back of the bank. The police apprehended Brown moments later, aided by a SunTrust customer who had seen the robbery through a window at the bank's entrance.

The judge asked the jury not only for its verdict on the armed-robbery count (violation of 18 U.S.C. § 2113(a), (d)) and the firearm count (violation of § 924(c)(1)(A)), but also on whether the firearm was discharged during the robbery. About ninety minutes after the judge dismissed the jury to begin its deliberations, he received a note asking whether the gun had to have been discharged knowingly. The judge responded in the negative. Shortly thereafter, the jury returned two guilty verdicts and a finding that the firearm had been discharged. As the judge had before trial granted Brown's unopposed motion to sever the felon-in-possession charge under 18 U.S.C. § 922(g) and to proceed without a jury, the judge himself found guilt on that issue. The judge imposed a sentence that included ten years under § 924(c)(1)(A)(iii).

\* \* \*

We review the district court's interpretation of a criminal statute de novo. *United States v. Wade*, 152 F.3d 969, 972 (D.C. Cir. 1998). So far, two circuits have interpreted the discharge provision and have reached different conclusions as to intent. The Tenth Circuit found no such requirement, *United States v. Nava-Sotelo*, 354 F.3d 1202, 1206 (10th Cir. 2003), while the Ninth Circuit recently found that the government must show "general intent," *United States v. Dare*, 425 F.3d 634, 641 n.3 (9th Cir. 2005). We agree with the Ninth Circuit that there is an implicit requirement of general intent, precluding liability for the accidental discharge of Brown's weapon.

We start with the text of § 924(c)(1)(A):

Except to the extent that a greater minimum sentence is otherwise provided by this subsection or by any other

provision of law, any person who, during and in relation to any crime of violence . . . uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm, shall, in addition to the punishment provided for such crime of violence . . .

(i) be sentenced to a term of imprisonment of not less than 5 years;

(ii) if the firearm is brandished, be sentenced to a term of imprisonment of not less than 7 years; and

(iii) if the firearm is discharged, be sentenced to a term of imprisonment of not less than 10 years.

As the text makes clear, the minimum penalty doesn't kick in anytime a gun is present on the scene of one of the specified crimes; instead, the firearm must be used or carried "during and in relation to" the crime, or possessed "in furtherance of" the crime. See *Muscarello v. United States*, 524 U.S. 125 (1998) (interpreting "carry" provision); *Bailey v. United States*, 516 U.S. 137 (1995) (interpreting "use" provision); *United States v. Gaston*, 357 F.3d 77, 82-83 (2004) (interpreting "possession in furtherance of"); *United States v. Wahl*, 290 F.3d 370, 375-77 (D.C. Cir. 2002) (same).

The three subsections of § 924(c)(1)(A) penalize increasingly culpable or harmful conduct. The government doesn't dispute that the five-year sentence in § 924(c)(1)(A)(i) requires proof of mens rea. See *United States v. Harris*, 959 F.2d 246, 258 (D.C. Cir. 1992) (saying, in interpretation of § 924(c) prior to 1998 amendment that appears irrelevant to this issue, "Consistent with the presumption of *mens rea* in criminal statutes, we assume that section 924(c) is violated only if the government proves that the defendant . . . intentionally used firearms in the commission" of the crime.).

Nor is there any dispute that the bump to seven years for brandishing in § 924(c)(1)(A)(ii) requires a separate intentional act. Congress defined "brandishing" as "display[ing] all or part of the firearm, or otherwise mak[ing] the presence of the firearm known to another person, *in order to intimidate* that person, regardless of whether the firearm is directly visible to that person." 18 U.S.C. § 924(c)(4) (emphasis added). A requirement of intent for the discharge provision would be consistent with this progression on the face of § 924(c)(1)(A); it would reserve the ten-year minimum penalty for the unambiguously more culpable act of intentionally discharging a firearm.

To be sure, discharges of a firearm are more likely to cause severe injury or even death than mere brandishing (though in cases where they actually do so the defendant would virtually always become independently guilty of another, major substantive offense). Nonetheless, as between an intentional brandishing and a purely accidental discharge, the increment in risk, given the less reprehensible intent, seems inadequate to explain a congressional intent to add three years (or five years if the discharge occurs without brandishing).

Moreover, the presumption against strict liability in criminal statutes supports the inference of an intent requirement. Our circuit has said that "[a]lthough cases generally apply [this presumption] to statutes that define criminal offenses, we have little doubt that it should also be applied to legal norms that define aggravating circumstances for purposes of sentencing." *United States v. Burke*, 888 F.2d 862, 866 n.6 (D.C. Cir. 1989). Like the rule of lenity—which the Supreme Court has stated on several occasions applies not only "to interpretations of the substantive ambit of criminal prohibitions, but also to the penalties they impose," *Bifulco v. United States*, 447 U.S. 381, 387 (1980)—"the presumption

against strict liability is founded on the principle that laws that deprive an individual of his liberty should be strictly construed. Laws that enhance the sentence of a criminal defendant meet this description." *Burke*, 888 F.2d at 866 n.6 (citation omitted).

The government argues that "[t]he ten year mandatory minimum sentence is applicable 'if the firearm is discharged.' . . . No words of qualification or limitation are included." Brief for Appellees 39 (citation omitted). But at oral argument the government conceded some implicit limitations: for example, that the statute (despite its use of the passive voice) wouldn't render an armed robber liable for the discharge by a law enforcement officer or bank teller who got a hold of the robber's gun and used it to threaten the robber. See Oral Argument Recording at 16:58-17:26. Even with that concession, however, the government's reading would produce a mandatory ten year sentence (i.e., five more than under the basic possession bump) if a defendant's weapon accidentally discharged when he dropped it to comply with a police request to do so.

The government's other arguments for a (limited) strict-liability reading do not convince us. The government seeks to draw a contrast between § 924(c)(4)'s definition of "brandish"—which explicitly includes an intent requirement—and the absence of such a provision for "discharge." We don't find the proposed inference compelling. There is a very reasonable explanation for Congress's decision to include a definition of one term but not the other. The statute's definition of "brandish" is broader than the dictionary definition, as it (Congress's definition) includes uses of a gun invisible to the person threatened so long as the perpetrator somehow makes its presence known. Compare, e.g., WEBSTER'S II NEW RIVERSIDE DICTIONARY 89 (1984): (defining "brandish" to mean "[t]o wave or flourish

threateningly, as a weapon"); WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY, UNABRIDGED 268 (1981) (defining "brandish" to mean (1) "to shake or wave (a weapon) menacingly"; (2) "to exhibit or expose in an ostentatious, shameless, or aggressive manner"). Having embarked on a definition, the drafter thought it proper to specify the required intent.

The government also relies on *United States v. Harris*, 959 F.2d 246 (D.C. Cir. 1992), where we analyzed a part of § 924(c)(1) (1988 ed. Supp. V) (replaced with § 924(c)(1)(B) by Pub. L. 105-386, 112 Stat. 3469 (1998)) that imposes a 30-year minimum when the weapon used is a machine gun. Assuming that this created a sentencing factor, we found that the government didn't need to prove that the defendant knew the precise nature of the weapon he used, reasoning that "there does not seem to be a significant difference in *mens rea* between a defendant who commits a drug crime using a pistol and one who commits the same crime using a machine gun; the act is different, but the mental state is equally blameworthy." 959 F.2d at 259. The Supreme Court later construed the same provision (also in its pre-1998 form) and found that it set out a separate offense rather than a sentencing factor. *Castillo v. United States*, 530 U.S. 120 (2000). While the Court didn't address what a defendant must know about his firearm, it did find the difference between carrying a pistol and carrying a machine gun "great, both in degree and kind," *id*. at 126, a proposition somewhat undermining our analysis in *Harris*.[1] In any event, our *Harris* decision simply read the

---

[1] Circuits have disagreed whether the revised machinegun provision sets out a sentencing factor or a separate offense. Compare *United States v. Harris*, 397 F.3d 404, 412-14 (6th Cir. 2005), with *United States v. Gamboa*, 439 F.3d 796, 810-11 (8th Cir. 2006).

statute as creating a penalty gradation based solely on the hazard of the weapon itself (which in almost all instances would likely be obvious to the defendant). That such a calibration of penalties might be reasonable in that context says little to support the rather anomalous pattern that would flow from the government's reading of § 924(c)(1)(A).

We note that in rejecting any intent requirement for the discharge provision, the Tenth Circuit broadly reasoned that because the two provisions penalizing brandishing and discharging were sentencing factors rather than independent offenses, "no mens rea [was] required." *Nava-Sotelo*, 354 F.3d at 1206. But the proposition that the Constitution imposes no such requirement (assuming its truth) responds neither to our concern for disrupting § 924(c)'s apparent structure nor to the presumption against strict liability in criminal statutes and the rule of lenity, both of which apply under *Bifulco* as much to penalties as to the substantive offense.

Having concluded that the discharge must be intentional, we must consider the character of the necessary intent. Like the Ninth Circuit in *Dare*, we find that, to trigger the minimum sentence under the discharge provision, the defendant must have acted with "general intent." 425 F.3d at 641 n.3. See, e.g., *United States v. Lewis*, 780 F.2d 1140, 1142-43 (4th Cir. 1986) ("In the absence of an explicit statement that a crime requires specific intent, courts often hold that only general intent is needed."). "A general intent crime is one in which an act was done voluntarily and intentionally, and *not because of mistake or accident.*" *United States v. Blair*, 54 F.3d 639, 642 (10th Cir. 1995) (emphasis added); see also *United States v. Rhone*, 864 F.2d 832, 834 (D.C. Cir. 1989) (describing standard jury instruction regarding general versus specific intent). The exclusion of mere accident appears to parallel the Model Penal Code's

formula for filling statutory gaps in intent: "When the culpability sufficient to establish a material element of an offense is not prescribed by law, such element is established if a person acts *purposely, knowingly or recklessly* with respect thereto." MODEL PENAL CODE § 2.02(3) (1985); see also *id.* at 228 (Explanatory Note to § 2.02(3)) (observing "a rough correspondence" between the default rule requiring purpose, knowledge, or recklessness and the common law requirement of "general intent").

There is no evidence that in discharging his firearm Brown acted purposely or knowingly. Nor can his conduct with respect to the discharge be viewed as "reckless." Obviously anyone who robs a bank and brandishes a firearm has already taken risks that themselves render his overall conduct reckless as the word is used in ordinary language or in, say, MODEL PENAL CODE § 2.02(2)(c) ("A person acts recklessly with respect to a material element of an offense when he consciously disregards a substantial and unjustifiable risk that the material element exists or will result from his conduct."). But if *that* intent sufficed for the discharge provision, the separate mens rea requirement for the discharge provision would be meaningless or virtually so. Cf. *United States v. Ray*, 21 F.3d 1134, 1139 (D.C. Cir. 1994) ("It is not the danger associated with bank robberies that warrants enhanced punishment under [18 U.S.C.] § 2113(d). It is the *increased* danger caused by robberies committed in a certain way."). As there is no evidence that the discharge itself arose out of any act manifesting additional disregard of others' safety, we reverse the district court's sentence with respect to § 924(c)(1)(A)(iii) and remand for resentencing under § 924(c)(1)(A)(ii).

Brown raises two other substantive arguments, but neither is persuasive. First, Brown's appellate counsel argues that his trial counsel furnished ineffective assistance of counsel by not

trying to suppress evidence of a nonverbal "statement" Brown made to a police officer indicating the location of his gun shortly after his arrest outside the bank. None of the officers had yet read Brown his rights. But the police officer's inquiries fall squarely within the public-safety exception to *Miranda v. Arizona*, 384 U.S. 436 (1966), recognized by the Supreme Court in *New York v. Quarles*, 467 U.S. 649 (1984). Failure to raise a meritless claim is not evidence of ineffective assistance. See *United States v. Holland*, 117 F.3d 589, 594 (D.C. Cir. 1997).

Second, Brown argues that the district court abused its discretion by permitting the government's introduction of physical evidence found with Brown at the time he was arrested—including a gun and a bag containing approximately $23,000 in cash—without a proper evidentiary foundation. In fact, witnesses testified to every step of the evidence's custody, from its original acquisition at the crime scene to its transmission to FBI agents and its handling by those agents.

\* \* \*

Brown was sentenced on November 1, 2004—after the Supreme Court's decision in *Blakely v. Washington*, 542 U.S. 296 (2004), but before its decision in *United States v. Booker*, 543 U.S. 220 (2005). During the hearing, the district court judge proposed to adopt three alternative sentences: one treating the Sentencing Guidelines as mandatory, a second treating the Guidelines as mandatory but applying only those enhancements that reflected facts found by the jury, and a third treating the Guidelines as advisory. The second and third options were designed, plainly, to comply with different remedies that the Supreme Court might choose if it were to extend *Blakely* to the Sentencing Guidelines. As we now know, the Court chose substantially the third. *Booker*, 543

U.S. at 245-46, 259. But the district court judge never calculated the third variant; Brown's counsel indicated she wasn't ready to proceed with argument under such an approach.

The government concedes that the first sentence reflected constitutional *Booker* error and that, because the constitutional error was preserved, our review is for harmless error—that is, we ask whether it appears, "beyond a reasonable doubt, that the error complained of did not contribute to the sentence obtained." See *United States v. Simpson*, 430 F.3d 1177, 1184 (D.C. Cir. 2005) (quoting *Chapman v. California*, 386 U.S. 18, 24 (1967)) (internal brackets deleted). It points out that the district court judge chose the longest sentence in the ranges he found applicable, and cites the district judge's statement that "it could be a much more serious sentence without [G]uidelines," and other language to like effect. But other statements of the district judge cut the other way. In particular, he acknowledged the existence of multiple potentially mitigating circumstances—which he was largely disabled from considering under a mandatory Guidelines regime:

> I understand the family difficulties he's had and the loss of family members and illnesses among his family and his wife's family and him having had psychiatric treatment and medications in the past.

As we noted in *United States v. Gomez*, "[i]f *Booker*'s rendering the Guidelines discretionary means anything," it must give district court judges greater latitude in assessing potentially mitigating factors than they had under the Sentencing Guidelines. 431 F.3d 818, 825 (D.C. Cir. 2005). Thus the court's signals appear mixed—on one hand the district judge suggests that Brown was lucky to get the benefit of the Guidelines' limits, and on the other he recognizes that

the Guidelines restricted consideration of some mitigating factors. On this record we find it hard to say that the government carried its burden of showing that the error was harmless, and remand for resentencing on the armed-robbery and felon-in-possession convictions.

* * *

The judgment is vacated and the case remanded for resentencing.

*So ordered.*