(Slip Opinion)　　　　OCTOBER TERM, 2008　　　　1

NOTE: Where it is feasible, a syllabus (headnote) will be released, as is being done in connection with this case, at the time the opinion is issued. The syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader. See *United States* v. *Detroit Timber & Lumber Co.,* 200 U. S. 321, 337.

# SUPREME COURT OF THE UNITED STATES

Syllabus

## DEAN *v*. UNITED STATES

### CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE ELEVENTH CIRCUIT

No. 08–5274.　Argued March 4, 2009—Decided April 29, 2009

An individual convicted for using or carrying a firearm during and in relation to any violent or drug trafficking crime, or possessing a firearm in furtherance of such a crime, receives a 5-year mandatory minimum sentence, in addition to the punishment for the underlying crime.　18 U. S. C. §924(c)(1)(A)(i).　The mandatory minimum increases to 7 years "if the firearm is brandished" and to 10 years "if the firearm is discharged." §§924(c)(1)(A)(ii), (iii).

　　Petitioner Dean was convicted of conspiring to commit a bank robbery and discharging a firearm during an armed robbery.　Because the firearm was "discharged" during the robbery, Dean was sentenced to a 10-year mandatory minimum prison term on the firearm count.　§924(c)(1)(A)(iii).　On appeal, he contended that the discharge was accidental, and that §924(c)(1)(A)(iii) requires proof that the defendant intended to discharge the firearm.　The Eleventh Circuit affirmed, holding that no proof of intent is required.

*Held:* Section 924(c)(1)(A)(iii) requires no separate proof of intent.　The 10-year mandatory minimum applies if a gun is discharged in the course of a violent or drug trafficking crime, whether on purpose or by accident.　Pp. 2–9.

　　(a) Subsection (iii) provides a minimum 10-year sentence "if the firearm is discharged." It does not require that the discharge be done knowingly or intentionally, or otherwise contain words of limitation. This Court "ordinarily resist[s] reading words or elements into a statute that do not appear on its face." *Bates* v. *United States*, 522 U. S. 23, 29.　Congress's use of the passive voice further indicates that subsection (iii) does not require proof of intent.　Cf. *Watson* v. *United States*, 552 U. S. ___, ___.　The statute's structure also suggests no such limitation.　Congress expressly included an intent re-

quirement for the 7-year mandatory minimum for brandishing a firearm by separately defining "brandish" to require that the firearm be displayed "in order to intimidate" another person. §924(c)(4). Congress did not, however, separately define "discharge" to include an intent requirement. It is generally presumed that Congress acts intentionally when including particular language in one section of a statute but not in another. *Russello* v. *United States*, 464 U. S. 16, 23. Contrary to Dean's contention, the phrase "during and in relation to" in the opening paragraph of §924(c)(1)(A) does not modify "is discharged," which appears in a separate subsection and in a different voice than the principal paragraph. "[I]n relation to" is most naturally read to modify only the nearby verbs "uses" and "carries." This reading will not lead to the absurd results posited by Dean. Pp. 3–6.

(b) Dean argues that subsection (iii) must be limited to intentional discharges in order to give effect to the statute's progression of harsher penalties for increasingly culpable conduct. While it is unusual to impose criminal punishment for the consequences of purely accidental conduct, it is not unusual to punish individuals for the unintended consequences of their *unlawful* acts. The fact that the discharge may be accidental does not mean that the defendant is blameless. The sentencing enhancement accounts for the risk of harm resulting from the manner in which the crime is carried out, for which the defendant is responsible. See *Harris* v. *United States*, 536 U. S. 545, 553. An individual bringing a loaded weapon to commit a crime runs the risk that the gun will discharge accidentally. A gunshot—whether accidental or intended—increases the risk that others will be injured, that people will panic, or that violence will be used in response. It also traumatizes bystanders, as it did here. Pp. 6–9.

(c) Because the statutory text and structure demonstrate that the discharge provision does not contain an intent requirement, the rule of lenity is not implicated in this case.

517 F. 3d 1224, affirmed.

ROBERTS, C. J., delivered the opinion of the Court, in which SCALIA, KENNEDY, SOUTER, THOMAS, GINSBURG, and ALITO, JJ., joined. STEVENS, J., and BREYER, J., filed dissenting opinions.

NOTICE: This opinion is subject to formal revision before publication in the preliminary print of the United States Reports. Readers are requested to notify the Reporter of Decisions, Supreme Court of the United States, Washington, D. C. 20543, of any typographical or other formal errors, in order that corrections may be made before the preliminary print goes to press.

# SUPREME COURT OF THE UNITED STATES

No. 08–5274

CHRISTOPHER MICHAEL DEAN, PETITIONER
*v.* UNITED STATES

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF
APPEALS FOR THE ELEVENTH CIRCUIT

[April 29, 2009]

CHIEF JUSTICE ROBERTS delivered the opinion of the Court.

Accidents happen. Sometimes they happen to individuals committing crimes with loaded guns. The question here is whether extra punishment Congress imposed for the discharge of a gun during certain crimes applies when the gun goes off accidentally.

I

Title 18 U. S. C. §924(c)(1)(A) criminalizes using or carrying a firearm during and in relation to any violent or drug trafficking crime, or possessing a firearm in furtherance of such a crime. An individual convicted of that offense receives a 5-year mandatory minimum sentence, in addition to the punishment for the underlying crime. §924(c)(1)(A)(i). The mandatory minimum increases to 7 years "if the firearm is brandished" and to 10 years "if the firearm is discharged." §§924(c)(1)(A)(ii), (iii).

In this case, a masked man entered a bank, waved a gun, and yelled at everyone to get down. He then walked behind the teller counter and started removing money from the teller stations. He grabbed bills with his left

hand, holding the gun in his right. At one point, he reached over a teller to remove money from her drawer. As he was collecting the money, the gun discharged, leaving a bullet hole in the partition between two stations. The robber cursed and dashed out of the bank. Witnesses later testified that he seemed surprised that the gun had gone off. No one was hurt. App. 16–19, 24, 27, 47–48, 79.

Police arrested Christopher Michael Dean and Ricardo Curtis Lopez for the crime. Both defendants were charged with conspiracy to commit a robbery affecting interstate commerce, in violation of 18 U. S. C. §1951(a), and aiding and abetting each other in using, carrying, possessing, and discharging a firearm during an armed robbery, in violation of §924(c)(1)(A)(iii) and §2. App. 11–12. At trial, Dean admitted that he had committed the robbery, *id.*, at 76–81, and a jury found him guilty on both the robbery and firearm counts. The District Court sentenced Dean to a mandatory minimum term of 10 years in prison on the firearm count, because the firearm "discharged" during the robbery. §924(c)(1)(A)(iii); App. 136.

Dean appealed, contending that the discharge was accidental, and that the sentencing enhancement in §924(c)(1)(A)(iii) requires proof that the defendant intended to discharge the firearm. The Court of Appeals affirmed, holding that separate proof of intent was not required. 517 F. 3d 1224, 1229 (CA11 2008). That decision created a conflict among the Circuits over whether the accidental discharge of a firearm during the specified crimes gives rise to the 10-year mandatory minimum. See *United States* v. *Brown*, 449 F. 3d 154 (CADC 2006) (holding that it does not). We granted certiorari to resolve that conflict. 555 U. S. \_\_\_\_ (2008).

## II

Section 924(c)(1)(A) provides:

"[A]ny person who, during and in relation to any

crime of violence or drug trafficking crime . . . uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm, shall, in addition to the punishment provided for such crime of violence or drug trafficking crime—

"(i) be sentenced to a term of imprisonment of not less than 5 years;

"(ii) if the firearm is brandished, be sentenced to a term of imprisonment of not less than 7 years; and

"(iii) if the firearm is discharged, be sentenced to a term of imprisonment of not less than 10 years."

The principal paragraph defines a complete offense and the subsections "explain how defendants are to 'be sentenced.'" *Harris* v. *United States*, 536 U. S. 545, 552 (2002). Subsection (i) "sets a catchall minimum" sentence of not less than five years. *Id.*, at 552–553. Subsections (ii) and (iii) increase the minimum penalty if the firearm "is brandished" or "is discharged." See *id.*, at 553. The parties disagree over whether §924(c)(1)(A)(iii) contains a requirement that the defendant intend to discharge the firearm. We hold that it does not.

## A

"We start, as always, with the language of the statute." *Williams* v. *Taylor*, 529 U. S. 420, 431 (2000). The text of subsection (iii) provides that a defendant shall be sentenced to a minimum of 10 years "if the firearm is discharged." It does not require that the discharge be done knowingly or intentionally, or otherwise contain words of limitation. As we explained in *Bates* v. *United States*, 522 U. S. 23 (1997), in declining to infer an "'intent to defraud'" requirement into a statute, "we ordinarily resist reading words or elements into a statute that do not appear on its face." *Id.*, at 29.

Congress's use of the passive voice further indicates that subsection (iii) does not require proof of intent. The pas-

sive voice focuses on an event that occurs without respect to a specific actor, and therefore without respect to any actor's intent or culpability. Cf. *Watson* v. *United States*, 552 U. S. ___, ___ (2007) (slip op., at 7) (use of passive voice in statutory phrase "to be used" in 18 U. S. C. §924(d)(1) reflects "agnosticism . . . about who does the using"). It is whether something happened—not how or why it happened—that matters.

The structure of the statute also suggests that subsection (iii) is not limited to the intentional discharge of a firearm. Subsection (ii) provides a 7-year mandatory minimum sentence if the firearm "is brandished." Congress expressly included an intent requirement for that provision, by defining "brandish" to mean "to display all or part of the firearm, or otherwise make the presence of the firearm known to another person, *in order to intimidate* that person." §924(c)(4) (emphasis added). The defendant must have intended to brandish the firearm, because the brandishing must have been done for a specific purpose. Congress did not, however, separately define "discharge" to include an intent requirement. "[W]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." *Russello* v. *United States*, 464 U. S. 16, 23 (1983) (internal quotation marks omitted).

Dean argues that the statute is not silent on the question presented. Congress, he contends, included an intent element in the opening paragraph of §924(c)(1)(A), and that element extends to the sentencing enhancements. Section 924(c)(1)(A) criminalizes using or carrying a firearm "during and in relation to" any violent or drug trafficking crime. In *Smith* v. *United States*, 508 U. S. 223 (1993), we stated that the phrase "in relation to" means "that the firearm must have some purpose or effect with

respect to the drug trafficking crime; its presence or involvement cannot be the result of accident or coincidence." *Id.*, at 238. Dean argues that the adverbial phrase thus necessarily embodies an intent requirement, and that the phrase modifies all the verbs in the statute—not only use, carry, and possess, but also brandish and discharge. Such a reading requires that a perpetrator knowingly discharge the firearm for the enhancement to apply. If the discharge is accidental, Dean argues, it is not "in relation to" the underlying crime.

The most natural reading of the statute, however, is that "in relation to" modifies only the nearby verbs "uses" and "carries." The next verb—"possesses"—is modified by its own adverbial clause, "in furtherance of." The last two verbs—"is brandished" and "is discharged"—appear in separate subsections and are in a different voice than the verbs in the principal paragraph. There is no basis for reading "in relation to" to extend all the way down to modify "is discharged." The better reading of the statute is that the adverbial phrases in the opening paragraph— "in relation to" and "in furtherance of"—modify their respective nearby verbs, and that neither phrase extends to the sentencing factors.

But, Dean argues, such a reading will lead to absurd results. The discharge provision on its face contains no temporal or causal limitations. In the absence of an intent requirement, the enhancement would apply "regardless of when the actions occur, or by whom or for what reason they are taken." Brief for Petitioner 11–12. It would, for example, apply if the gun used during the crime were discharged "weeks (or years) before or after the crime." Reply Brief for Petitioner 11.

We do not agree that implying an intent requirement is necessary to address such concerns. As the Government recognizes, sentencing factors such as the one here "often involve . . . special features of the manner in which a basic

crime was carried out." Brief for United States 29 (quoting *Harris,* 536 U. S., at 553; internal quotation marks omitted). The basic crime here is using or carrying a firearm during and in relation to a violent or drug trafficking crime, or possessing a firearm in furtherance of any such crime. Fanciful hypotheticals testing whether the discharge was a "special featur[e]" of how the "basic crime was carried out," *Harris*, 536 U. S., at 553 (internal quotation marks omitted), are best addressed in those terms, not by contorting and stretching the statutory language to imply an intent requirement.

## B

Dean further argues that even if the statute is viewed as silent on the intent question, that silence compels a ruling in his favor. There is, he notes, a presumption that criminal prohibitions include a requirement that the Government prove the defendant intended the conduct made criminal. In light of this presumption, we have "on a number of occasions read a state-of-mind component into an offense even when the statutory definition did not in terms so provide." *United States* v. *United States Gypsum Co.*, 438 U. S. 422, 437 (1978). "[S]ome indication of congressional intent, express or implied, is required to dispense with *mens rea* as an element of a crime." *Staples* v. *United States*, 511 U. S. 600, 606 (1994).

Dean argues that the presumption is especially strong in this case, given the structure and purpose of the statute. In his view, the three subsections are intended to provide harsher penalties for increasingly culpable conduct: a 5-year minimum for using, carrying, or possessing a firearm; a 7-year minimum for brandishing a firearm; and a 10-year minimum for discharging a firearm. Incorporating an intent requirement into the discharge provision is necessary to give effect to that progression, because an accidental discharge is less culpable than intentional

brandishment. See *Brown*, 449 F. 3d, at 156.

It is unusual to impose criminal punishment for the consequences of purely accidental conduct. But it is not unusual to punish individuals for the unintended consequences of their *unlawful* acts. See 2 W. LaFave, Substantive Criminal Law §14.4, pp. 436–437 (2d ed. 2003). The felony-murder rule is a familiar example: If a defendant commits an unintended homicide while committing another felony, the defendant can be convicted of murder. See 18 U. S. C. §1111. The Sentencing Guidelines reflect the same principle. See United States Sentencing Commission, Guidelines Manual §2A2.2(b)(3) (Nov. 2008) (USSG) (increasing offense level for aggravated assault according to the seriousness of the injury); §2D2.3 (increasing offense level for operating or directing the operation of a common carrier under the influence of alcohol or drugs if death or serious bodily injury results).

Blackstone expressed the idea in the following terms:

> "[I]f any accidental mischief happens to follow from the performance of a *lawful* act, the party stands excused from all guilt: but if a man be doing any thing *unlawful*, and a consequence ensues which he did not foresee or intend, as the death of a man or the like, his want of foresight shall be no excuse; for, being guilty of one offence, in doing antecedently what is in itself unlawful, he is criminally guilty of whatever consequence may follow the first misbehaviour." 4 W. Blackstone, Commentaries on the Laws of England 26–27 (1769).

Here the defendant is already guilty of unlawful conduct twice over: a violent or drug trafficking offense and the use, carrying, or possession of a firearm in the course of that offense. That unlawful conduct was not an accident. See *Smith*, 508 U. S., at 238.

The fact that the actual discharge of a gun covered

under §924(c)(1)(A)(iii) may be accidental does not mean that the defendant is blameless. The sentencing enhancement in subsection (iii) accounts for the risk of harm resulting from the manner in which the crime is carried out, for which the defendant is responsible. See *Harris*, *supra*, at 553. An individual who brings a loaded weapon to commit a crime runs the risk that the gun will discharge accidentally. A gunshot in such circumstances—whether accidental or intended—increases the risk that others will be injured, that people will panic, or that violence (with its own danger to those nearby) will be used in response. Those criminals wishing to avoid the penalty for an inadvertent discharge can lock or unload the firearm, handle it with care during the underlying violent or drug trafficking crime, leave the gun at home, or—best yet—avoid committing the felony in the first place.

JUSTICE STEVENS contends that the statute should be read to require a showing of intent because harm resulting from a discharge may be punishable under other provisions, such as the Sentencing Guidelines (but only if "bodily injury" results). *Post*, at 6 (dissenting opinion) (citing USSG §2B3.1(b)(3)). But Congress in §924(c)(1)(A)(iii) elected to impose a mandatory term, without regard to more generally applicable sentencing provisions. Punishment available under such provisions therefore does not suggest that the statute at issue here is limited to intentional discharges.

And although the point is not relevant under the correct reading of the statute, it is wrong to assert that the gunshot here "caused no harm." *Post*, at 1. By pure luck, no one was killed or wounded. But the gunshot plainly added to the trauma experienced by those held during the armed robbery. See, *e.g.*, App. 22 (the gunshot "shook us all"); *ibid.* ("Melissa in the lobby popped up and said, 'oh, my God, has he shot Nora?'").

### C

Dean finally argues that any doubts about the proper interpretation of the statute should be resolved in his favor under the rule of lenity. See Brief for Petitioner 6. "The simple existence of some statutory ambiguity, however, is not sufficient to warrant application of that rule, for most statutes are ambiguous to some degree." *Muscarello* v. *United States*, 524 U. S. 125, 138 (1998); see also *Smith*, *supra*, at 239 ("The mere possibility of articulating a narrower construction, however, does not by itself make the rule of lenity applicable"). "To invoke the rule, we must conclude that there is a grievous ambiguity or uncertainty in the statute." *Muscarello*, *supra*, at 138–139 (internal quotation marks omitted). In this case, the statutory text and structure convince us that the discharge provision does not contain an intent requirement. Dean's contrary arguments are not enough to render the statute grievously ambiguous.

\*　\*　\*

Section 924(c)(1)(A)(iii) requires no separate proof of intent. The 10-year mandatory minimum applies if a gun is discharged in the course of a violent or drug trafficking crime, whether on purpose or by accident. The judgment of the Court of Appeals for the Eleventh Circuit is affirmed.

*It is so ordered.*

# SUPREME COURT OF THE UNITED STATES

———————

No. 08–5274

———————

## CHRISTOPHER MICHAEL DEAN, PETITIONER
## *v.* UNITED STATES

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF
APPEALS FOR THE ELEVENTH CIRCUIT

[April 29, 2009]

JUSTICE STEVENS, dissenting.

Accidents happen, but they seldom give rise to criminal liability. Indeed, if they cause no harm they seldom give rise to any liability. The Court today nevertheless holds that petitioner is subject to a mandatory additional sentence—a species of criminal liability—for an accident that caused no harm. For two reasons, 18 U. S. C. §924(c)(1)(A)(iii) should not be so construed. First, the structure of §924(c)(1)(A) suggests that Congress intended to provide escalating sentences for increasingly culpable conduct and that the discharge provision therefore applies only to intentional discharges. Second, even if the statute did not affirmatively support that inference, the common-law presumption that provisions imposing criminal penalties require proof of *mens rea* would lead to the same conclusion. Cf. *United States* v. *X-Citement Video, Inc.*, 513 U. S. 64, 70 (1994). Accordingly, I would hold that the Court of Appeals erred in concluding that petitioner could be sentenced under §924(c)(1)(A)(iii) absent evidence that he intended to discharge his gun.

I

It is clear from the structure and history of §924(c)(1)(A) that Congress intended §924(c)(1)(A)(iii) to apply only to intentional discharges. The statute's structure supports

the inference that Congress intended to impose increasingly harsh punishment for increasingly culpable conduct. The lesser enhancements for carrying or brandishing provided by clauses (i) and (ii) clearly require proof of intent. Clause (i) imposes a 5-year mandatory minimum sentence for using or carrying a firearm "during and in relation to" a crime of violence or drug trafficking offense, or possessing a firearm "in furtherance" of such an offense. As we have said before, the provision's relational terms convey that it does not reach inadvertent conduct. See *Smith* v. *United States*, 508 U. S. 223, 238 (1993) ("The phrase 'in relation to' . . . at a minimum, clarifies that the firearm must have some purpose or effect with respect to the drug trafficking crime; its presence or involvement cannot be the result of accident or coincidence"). Similarly, clause (ii) mandates an enhanced penalty for brandishing a firearm only upon proof that a defendant had the specific intent to intimidate. See §924(c)(4). In that context, the most natural reading of clause (iii), which imposes the greatest mandatory penalty, is that it provides additional punishment for the more culpable act of intentional discharge.[1]

The legislative history also indicates that Congress intended to impose an enhanced penalty only for intentional discharge. In *Bailey* v. *United States*, 516 U. S. 137, 148 (1995), the Court held that "use" of a firearm for purposes of §924(c)(1) required some type of "active employment," such as "brandishing, displaying, bartering, striking with, and, most obviously, firing or attempting to fire." Congress responded to *Bailey* by amending

---

[1] Contrary to the Court's suggestion, *ante*, at 4, Congress' provision of a specific intent element for brandishing and not for discharge only supports the conclusion that Congress did not intend enhancements under the discharge provision to require proof of specific intent; it supports no inference that Congress also intended to eliminate any general intent requirement and thereby make offenders strictly liable.

§924(c)(1), making it an offense to "posses[s]" a firearm "in furtherance of" one of the predicate offenses and adding sentencing enhancements for brandishing and discharge. See Pub. L. 105–386, §1(2)(1), 112 Stat. 3469; see also 144 Cong. Rec. 26608 (1998) (remarks of Sen. DeWine) (referring to the amendments as the "Bailey Fix Act"). Given the close relationship between the *Bailey* decision and Congress' enactment of the brandishing and discharge provisions, those terms are best read as codifying some of the more culpable among the "active employments" of a firearm that the Court identified in *Bailey*.

## II

Even if there were no evidence that Congress intended §924(c)(1)(A)(iii) to apply only to intentional discharges, the presumption that criminal provisions include an intent requirement would lead me to the same conclusion. Consistent with the common-law tradition, the requirement of *mens rea* has long been the rule of our criminal jurisprudence. See *United States* v. *United States Gypsum Co.*, 438 U. S. 422 (1978). The concept of crime as a "concurrence of an evil-meaning mind with an evil-doing hand . . . took deep and early root in American soil." *Morissette* v. *United States*, 342 U. S. 246, 251–252 (1952). Legislating against that backdrop, States often omitted intent elements when codifying the criminal law, and "courts assumed that the omission did not signify disapproval of the principle but merely recognized that intent was so inherent in the idea of the offense that it required no statutory affirmation." *Id.*, at 252. Similarly, absent a clear statement by Congress that it intended to create a strict-liability offense, a *mens rea* requirement has generally been presumed in federal statutes. See *id.*, at 273; *Staples* v. *United States*, 511 U. S. 600, 605–606 (1994). With only a few narrowly delineated exceptions for such crimes as statutory rape and public welfare offenses, the presump-

tion remains the rule today. See *Morissette*, 342 U. S., at 251–254, and n. 8; see also *Staples*, 511 U. S., at 606–607 (discussing *United States* v. *Balint*, 258 U. S. 250 (1922)).

Although mandatory minimum sentencing provisions are of too recent genesis to have any common-law pedigree, see *Harris* v. *United States*, 536 U. S. 545, 579, 581, n. 5 (2002) (THOMAS, J., dissenting), there is no sensible reason for treating them differently from offense elements for purposes of the presumption of *mens rea*. Sentencing provisions of this type have substantially the same effect on a defendant's liberty as aggravated offense provisions. Although a sentencing judge has discretion to issue sentences under §924(c)(1)(A) within the substantial range bounded on one end by the 5-, 7-, or 10-year mandatory minimum sentence and on the other by the statutory maximum sentence, judges in practice rarely exercise that discretion. As JUSTICE THOMAS noted in *Harris*, "the sentence imposed when a defendant is found only to have 'carried' a firearm 'in relation to' a drug trafficking offense appears to be, almost uniformly, if not invariably, five years," and "those found to have brandished a firearm typically, if not always, are sentenced only to 7 years in prison while those found to have discharged a firearm are sentenced only to 10 years." *Id.*, at 578 (dissenting opinion); see also United States Sentencing Commission, Guidelines Manual §2K2.4, comment., n. 2 (Nov. 2008) (USSG) (stating that the minimum sentence required by §924(c)(1)(A) is the guideline sentence and any increase is an upward departure). If anything, imposition of a mandatory minimum sentence under §924(c)(1)(A) will likely have a greater effect on a defendant's liberty than will conviction for another offense because, unlike sentences for most federal offenses, sentences imposed pursuant to that section must be served consecutively to any other sentence. See §924(c)(1)(D)(ii).

As the foregoing shows, mandatory minimum sentenc-

ing provisions are in effect no different from aggravated offense provisions. The common-law tradition of requiring proof of *mens rea* to establish criminal culpability should thus apply equally to such sentencing factors. Absent a clear indication that Congress intended to create a strict-liability enhancement, courts should presume that a provision that mandates enhanced criminal penalties requires proof of intent. This conclusion is bolstered by the fact that we have long applied the rule of lenity—which is similar to the *mens rea* rule in both origin and purpose—to provisions that increase criminal penalties as well as those that criminalize conduct. See *United States* v. *R. L. C.*, 503 U. S. 291, 305 (1992) (plurality opinion); *Bifulco* v. *United States*, 447 U. S. 381, 387 (1980); *Ladner* v. *United States*, 358 U. S. 169, 178 (1958).[2] Accordingly, I would apply the presumption in this case and avoid the strange result of imposing a substantially harsher penalty for an act caused not by an "evil-meaning mind" but by a clumsy hand.

The majority urges the result in this case is not unusual because legislatures commonly "punish individuals for the unintended consequences of their *unlawful* acts," *ante*, at 7, but the collection of examples that follows this assertion

———————

[2] To be sure, there are also inquiries for which the Court has said that sentencing provisions are different. In *Harris* v. *United States*, 536 U. S. 545, 557 (2002) (plurality opinion), and *McMillan* v. *Pennsylvania*, 477 U. S. 79, 87–88 (1986), the Court distinguished for purposes of constitutional analysis mandatory minimum sentencing schemes from offense elements and provisions that increase the statutory maximum sentence. I continue to agree with JUSTICE THOMAS' compelling dissent in *Harris*, in which he rejected the distinction on the ground that mandatory minimum sentencing provisions have at least as significant an effect on a defendant's liberty as additional convictions or statutory maximum provisions. 536 U. S., at 577–578. The logic of treating these provisions similarly is buttressed by our subsequent decision in *United States* v. *Booker*, 543 U. S. 220, 233–234 (2005).

is telling. The Court cites the felony-murder rule, 18 U. S. C. §1111, and Sentencing Guidelines provisions that permit increased punishment based on the seriousness of the harm caused by the predicate act, see USSG §2A2.2(b)(3) (increasing the offense level for aggravated assault according to the seriousness of the injury); §2D2.3 (increasing the offense level for operating a common carrier under the influence of alcohol or drugs if death or serious injury results). These examples have in common the provision of enhanced penalties for the infliction of some additional harm. By contrast, §924(c)(1)(A)(iii) punishes discharges whether or not any harm is realized. Additionally, in each of the majority's examples Congress or the Sentencing Commission made explicit its intent to punish the resulting harm regardless of the perpetrator's *mens rea.* Section 924(c)(1)(A)(iii) contains no analogous statement. For these reasons, §924(c)(1)(A)(iii) is readily distinguishable from the provisions the majority cites.

Contrary to the majority's suggestion, the existence of provisions that penalize the unintended consequences of felonious conduct underscores the reasonableness of reading §924(c)(1)(A)(iii) to require proof of intent. When harm results from a firearm discharge during the commission of a violent felony or drug trafficking offense, the defendant will be punishable pursuant to USSG §2B3.1(b)(3) (increasing the offense level for robbery according to the resulting degree of bodily injury), the felony-murder rule, or a similar provision. That a defendant will be subject to punishment for the harm resulting from a discharge whether or not he is also subject to the enhanced penalty imposed by §924(c)(1)(A)(iii) indicates that the latter provision was intended to serve a different purpose— namely, to punish the more culpable act of intentional discharge.

### III

In sum, the structure and history of §924(c)(1)(A) indicate that Congress meant to impose the more substantial penalty provided by clause (iii) only in cases of intentional discharge. Were the statute unclear in that regard, I would reach the same conclusion by applying the presumption that Congress intended to include a *mens rea* requirement. Mandatory sentencing provisions are not meaningfully distinguishable from statutes defining crimes to which we have previously applied the presumption; the rule of *Morissette* and *Staples* and not the felony-murder rule should therefore guide our analysis. Because there is insufficient evidence to rebut the presumption in this case, I respectfully dissent.

# SUPREME COURT OF THE UNITED STATES

_____

No. 08–5274

_____

## CHRISTOPHER MICHAEL DEAN, PETITIONER
## *v.* UNITED STATES

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF
APPEALS FOR THE ELEVENTH CIRCUIT

[April 29, 2009]

JUSTICE BREYER, dissenting.

For many of the reasons that JUSTICE STEVENS sets forth, I believe the statutory provision before us applies to intentional, but not to accidental, discharges of firearms. As JUSTICE STEVENS points out, this Court in *Bailey* v. *United States*, 516 U. S. 137, 148 (1995), held that simple possession of a firearm, without some type of "active employment," such as "brandishing, displaying, bartering, striking with, and, most obviously, firing or attempting to fire," did not constitute "use" of a firearm. See *ante*, at 2 (dissenting opinion). It seems possible, if not likely, that Congress, in this statute, amended then-existing law by criminalizing the "simple possession" that *Bailey* found insufficient and then imposed a set of ever more severe mandatory sentences for the conduct that the Court listed in *Bailey* when it considered ways in which an offender might use a firearm. See *ante*, at 2–3. If so, the statutory words "is discharged," 18 U. S. C. §924(c)(1)(A)(iii), refer to what *Bailey* called "firing," and they do not encompass an accidental discharge.

I concede that the Court lists strong arguments to the contrary. But, in my view, the "rule of lenity" tips the balance against the majority's position. The "rule of lenity" as ordinarily applied reflects the law's insistence that a criminal statute provide "fair warning . . . of what the

law intends to do if a certain line is passed." *United States*
v. *Bass*, 404 U. S. 336, 348 (1971) (internal quotation
marks omitted). But here, where a mandatory minimum
sentence is at issue, its application reflects an additional
consideration, namely, that its application will likely
produce an interpretation that hews more closely to Con-
gress' sentencing intent.

That is because, in the case of a mandatory minimum,
an interpretation that errs on the side of *exclusion* (an
interpretive error on the side of leniency) still *permits* the
sentencing judge to impose a sentence similar to, perhaps
close to, the statutory sentence even if that sentence (be-
cause of the court's interpretation of the statute) is not
legislatively *required*. See, *e.g.,* United States Sentencing
Commission, Guidelines Manual §2B3.1(b)(2) (Nov. 2008)
(Specific Offense Characteristics) (possibly calling for a 7-
to-9 year increase in the sentencing range in a case like
this one). The sentencing judge is most likely to give a low
non-Guidelines sentence in an unusual case—where the
nature of the accident, for example, makes clear that the
offender was not responsible and perhaps that the dis-
charge put no one at risk. See, *e.g., Koon* v. *United States*,
518 U. S. 81, 92–94 (1996). And, of course, the unusual
nature of such a case means it is the kind of case that
Congress did *not* have in mind when it enacted the stat-
ute. Moreover, an error that excludes (erroneously) a set
of instances Congress meant to include (such as accidental
discharge) could lead the Sentencing Commission to focus
on those cases and exercise its investigative and judg-
mental powers to decide how those cases should be han-
dled. This investigation would, in turn, make available to
Congress a body of evidence and analysis that will help it
reconsider the statute if it wishes to do so.

On the other hand, an interpretation that errs on the
side of *inclusion* requires imposing 10 years of additional
imprisonment on individuals whom Congress would not

have intended to punish so harshly. Such an interpretation would prevent a sentencing court from giving a lower sentence even in an unusual case, for example, where the accident is unintended, unforeseeable, and imposes no additional risk. And such an interpretation, by erroneously taking discretion away from the sentencing judge, would ensure results that depart dramatically from those Congress would have intended. Cf. *Harris* v. *United States*, 536 U. S. 545, 570 (2002) (BREYER, J., concurring in part and concurring in judgment) ("statutory mandatory minimums generally deny the judge the legal power to depart downward, no matter how unusual the special circumstances that call for leniency"). Moreover, because such unusual cases are (by definition) rare, these errors would provide little incentive to the Sentencing Commission or Congress to reconsider the statute.

These interpretive asymmetries give the rule of lenity special force in the context of mandatory minimum provisions. Because I believe the discharge provision here is sufficiently ambiguous to warrant the application of that rule, I respectfully dissent.